## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: | ) |
| | ) |
| REAL GOODS SOLAR, INC. | ) Case No. 20-11590-TBM |
| EIN: 26-1851813 | ) |
| | ) Chapter 7 |
| Debtor. | ) |
| | ) |

## MOTION FOR SUBSTANTIVE CONSOLIDATION OF THE ESTATES OF REAL GOODS SOLAR, INC. AND ALTERIS RENEWABLES, INC.

Jeanne Y. Jagow, as chapter 7 Trustee of the bankruptcy estate of Real Goods Solar, Inc. ("Trustee"), through her undersigned counsel, hereby files this Motion for Substantive Consolidation of the Estates of Real Goods Solar, Inc. and Alteris Renewables, Inc. (this "Motion") as follows:

## INTRODUCTION AND BACKGROUND

Real Goods Solar, Inc.

1. On March 5, 2020, Real Goods Solar, Inc. ("RGS") filed a petition for relief under chapter 7 of title 11 of the United States Code.

2. Trustee is the duly appointed and acting chapter 7 Trustee of the bankruptcy estate of RGS.

3. RGS was a Colorado corporation with its corporate headquarters located at 110 16th Street, Fl. 3, Denver, CO 80202. RGS' original business consisted of the sale and installation of solar energy systems across the continental United States and Hawaii (the "Solar Division"). RGS' primary customers were homeowners and small commercial building owners in the United States. RGS and its subsidiaries offered turnkey solar services, including design, procurement, permitting, build-out, grid connection, financing referrals and warranty work for its customers.

Alteris Renewables, Inc.

4. Trustee is informed and believes that, prior to 2014, RGS acquired 100% of the outstanding stock of Alteris Renewables, Inc. ("Alteris"), a solar sale and installation company operating on the east coast.

5. Trustee further believed that RGS operated Alteris as a division of its Solar Division, rather than as separate, distinct business. Trustee's belief is based on the fact that RGS did not maintain separate books and records for Alteris; the employees of Alteris were employees of RGS; Alteris did not have separate bank accounts; Alteris did not observe corporate formalities

or upon information and belief, elected separate officers; and the entities filed consolidated tax returns and financial statements. Trustee is informed and believes that sales on the east coast were booked as sales/accounts receivable of RGS and that operating expenses of Alteris were paid by RGS.

6. Alteris leased office and warehouse space located at 420 Woodlawn Ave, Bloomfield, CT 06002 (the "Business Premises") from FJS Family, LLC (the "Landlord") pursuant to a Lease agreement and Lease Amendment and Extension dated January 8, 2020 (the "Lease"). The Lease is between the Landlord and "Alteris Renewables, Inc., dba RGS Energy."

7. The Landlord filed a proof of claim in RGS' bankruptcy case based on past due rent for the Business Premises.

8. On its Statement of Financial Affairs and Schedules A/B, RGS listed inventory, furniture, fixtures and equipment located at Business Premises as assets of RGS (the "Assets").

9. Alteris ceased operating at approximately the same time as RGS.

10. On May 6, 2020, Trustee filed her Trustee's Motion for Authority to File Bankruptcy for Certain of Debtor's Subsidiaries (the "Subsidiary Motion") [Docket No. 58]. In the Subsidiary Motion, Trustee requested authority to commence bankruptcy proceedings for, among other entities, Alteris.

11. On June 23, 2020, the Court granted the Subsidiary Motion and authorized Trustee to commence bankruptcy proceedings for Alteris [Docket No. 86].

12. On July 20, 2020, Trustee commenced a chapter 7 case for Alteris by filing a petition for relief in this Court (the "Alteris Bankruptcy Case") [Docket No. 1 in Case No. 20-14913].

13. Trustee is the duly appointed and acting chapter 7 trustee in the Alteris Bankruptcy Case [Docket No. 7 in Case No. 20-14913].

14. On July 21, 2020, Trustee filed her Application to Employ Onsager | Fletcher | Johnson LLC as Counsel for the Chapter 7 Trustee [Docket No. 8 in Case No. 20-14913], which the Court granted on July 22, 2021 [Docket No. 9 in Case No. 20-14913].

15. On August 18, 2020, Trustee filed her Trustee's Combined Motion Seeking: (A) Approval of Settlement Agreement with Landlord and for Entry of Order Rejecting Bloomfield, CT Lease; (B) Authority to: (i) Sell Personal Property by Public Auction Free and Clear of Liens; (ii) Employ and Compensate Auctioneer; and (iii) Pay any Personal Property Tax Liens from Auction Proceeds; and (C) for Entry of Order Suspending 14-Day Stay Imposed by Operation of Fed.R.Bankr.P. 6004(h) (the "Sale Motion") in the Alteris Bankruptcy Case [Docket. No. 23 in Case No. 20-14913]. On September 18, 2020, the Court entered an Order approving the Sale Motion (the "Sale Order") [Docket. No. 33 in Case No. 20-14913].

16. Hamilton Group, LLC ("Hamilton") conducted the auction of the Assets. The total sales price from the auction was $152,985.00 (the "Proceeds") [Docket. No. 35 in Case No. 20-14913].

17. On September 10, 2020, Trustee issued a Notice of Possible Dividends, pursuant to which December 14, 2020, was set as the deadline to file proofs of claim in the Alteris Bankruptcy Case [Docket No. 29 in Case No. 20-14913]. The Notice of Possible Dividends was served on the mailing matrix for both the RGS case and the Alteris Bankruptcy Case. No creditors filed a proof of claim in the Alteris Bankruptcy Case before the bar date.

## RELIEF REQUESTED

18. By this Motion, Trustee requests that the Court enter an Order substantively consolidating the bankruptcy estates of RGS and Alteris.

19. "While not specifically authorized by the [B]ankruptcy [C]ode, bankruptcy courts have the power to order substantive consolidation by virtue of their general equitable powers." *Eastgroup Properties v. Southern Motel Assoc., Ltd.*, 935 F.2d 245, 248 (11th Cir. Fla. 1991). *See also* 11 U.S.C. § 105; 2 COLLIER ON BANKRUPTCY ¶ 105.09[1][b] (Alan N. Resnick & Henry J. Sommers, eds. 16th ed.). The concept was approved by the Supreme Court as early as 1941. *See generally Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215 (1941) (holding that the assets of an individual debtor could be "consolidated" with the assets of a corporation to which the individual had fraudulently transferred the majority of his assets).

20. Substantive consolidation involves the pooling of assets and liabilities of separate legal entities. 2 COLLIER ON BANKRUPTCY ¶ 105.09[1][a] (Alan N. Resnick & Henry J. Sommers, eds. 16th ed.). The doctrine arises in equity and has "no statutorily prescribed standards." 2 COLLIER ON BANKRUPTCY ¶ 105.09[2] (Alan N. Resnick & Henry J. Sommers, eds. 16th ed.). Instead, whether substantive consolidation is warranted depends upon the facts of the given case. *Id.* As such, "precedent alone is of limited value because of the diversity of factual patterns." *In re Bonham*, 226 B.R. 56, 76 (Bankr. D. Alaska 1998) (citing *In re Reider*, 31 F.3d 1102, 1108 (11th Cir 1994)). *See also In re Steury*, 94 B.R. 553, 554 (Bankr. N.D. Ind. 1988) (quoting *In re Augie/Restivo Banking Co., Ltd.*, 84 B.R. 315, 321 (Bankr. E.D. N.Y. 1988)). Factors considered by other courts "are only an aid to and not a substitute for the court's judgment." *Id.*

21. In the Tenth Circuit, substantive consolidation of related debtor entities is warranted where:

    A.    the parent owned all or a majority of the capital stock of the subsidiary;
    B.    there were common directors and officers;
    C.    the parent corporation had financed the subsidiary;
    D.    the parent corporation was responsible for the incorporation of the subsidiary;
    E.    the subsidiary had grossly inadequate capital;

    F. the parent company paid the salaries or expenses or losses of the subsidiary;
    G. the subsidiary had no independent business;
    H. in the papers of the parent corporation, the subsidiary was referred to as such or as a department or division;
    I. the directors and executives of the subsidiary did not act independently but took direction from the parent; and
    J. the formal legal requirements of the subsidiary as a separate and independent corporation were not observed.

*In re Gulfco Inv. Corp.*, 593 F.2d 921, 928-929 (10th Cir. 1979) (citing *Fish v. East*, 114 F.2d 177 (10th Cir. 1940) and noting that not all factors need to be present before a substantive consolidation order may enter). *See In re Falls Event Ctr. LLC*, 600 B.R. 857 (Bankr. D. Utah 2019) (allowing substantive consolidation of debtor and non-debtor entities retroactive to the date the corporate parent's petition was filed based on application of the *Gulfco* factors).

  22. The primary purpose of substantive consolidation is to "avoid fraud or injustice[,]" *In re Gulfco Inv. Corp.*, 593 F.2d 921, 928 (10th Cir. 1979), and "'to insure the equitable treatment of all creditors.'" *Eastgroup Properties v. Southern Motel Assoc., Ltd.*, 935 F.2d 245, 248 (11th Cir. 1991) (quoting *In re Murray Indus.*, 119 Bankr. 820, 830 (Bankr. M.D. Fla. 1990)). Thus, many courts consider whether the benefits of substantive consolidation outweigh the harm to objecting parties. *Id.* at 249 (adopting a test that requires "the proponent of substantive consolidation [to] show that (1) there is substantial identity between the entities to be consolidated; and (2) consolidation is necessary to avoid some harm or to realize some benefit"). *See generally In re Manzey Land & Cattle Co.*, 17 B.R. 332, 338 (Bankr. D.S.D. 1982) (finding that substantive consolidation was warranted because, *inter alia*, "consolidation will most likely lessen administrative expenses and increase the dividend to the unsecured and undersecured creditors").

  23. Although substantive consolidation should be "used sparingly," the modern trend is to allow substantive consolidation where appropriate. *Eastgroup Properties v. Southern Motel Assoc., Ltd.*, 935 F.2d 245, 248 (11th Cir. 1991).

  24. Based on these principles, substantive consolidation of the assets and liabilities of the estates of RGS and Alteris is warranted.

<u>The *Gulfco* Factors</u>

  25. RGS acquired a 100% interest in Alteris no later than 2014, and has been the sole owner of Alteris since that time (Factor A).

  26. Trustee believes that RGS used its employees to operate its solar division on the east coast through Alteris (Factor G). Trustee's belief is based on the following: RGS did not maintain separate books and records for Alteris (Factor J); the employees of Alteris were employees of RGS; Alteris did not have separate bank accounts (Factor J); Alteris did not observe corporate formalities and or elect separate officers (Factors B and J); and the entities filed consolidated tax returns and financial statements (Factor J). Trustee is informed and believes that

sales on the east coast were booked as sales/accounts receivable of RGS (Factors G and H) and that operating expenses of Alteris were paid by RGS (Factor F).

27. Based on the foregoing, substantive consolidation is warranted based on application of the *Gulfco* factors.

No Separate Economic Existence

28. RGS and Alteris had no separate economic existence. Indeed, both entities used the same bank accounts, filed consolidated tax returns, prepared consolidated financial statements, sales by Alteris were booked as sales by RGS, and RGS paid Alteris' expenses.

29. The one debt that Trustee is aware of that was in the name of Alteris' is the Lease for the Connecticut warehouse which was between Landlord and "Alteris Renewables, Inc., dba RGS Energy". However, the Landlord filed a proof of claim in RGS' bankruptcy case, but not in Alteris' bankruptcy case. Trustee therefore believes that the Landlord is not relying on the separateness of RGS and Alteris.

The Benefits of Substantive Consolidation Outweigh the Harm, if any, to Creditors

30. Trustee is informed and believes that Alteris' liabilities are included in the liabilities of RGS. Further, no creditors filed a proof of claim in Alteris' bankruptcy case before the bar date. In that regard, substantive consolidation will not harm anyone. Instead, substantive consolidation will increase the assets of the RGS estate for the benefit of the joint creditors of RGS and Alteris.

31. As a whole, unsecured creditors will suffer no economic detriment in the event the estates of RGS and Alteris are consolidated. In contrast, substantive consolidation will lead to a fair and equitable distribution of the consolidated assets to common creditors.

32. In addition, substantive consolidation will eliminate duplicative expenses attributable to administering the estates of related debtors and may minimize "confusion by parties in interest created by" the fact that separate cases are pending for entities that were operated as one in the same. *See In re Falls Event Ctr. LLC*, 600 B.R. 857, 865 (Bankr. D. Utah 2019) (finding that substantive consolidation would "greatly streamline" related bankruptcy cases). *See also In re Manzey Land & Cattle Co.*, 17 B.R. 332, 338 (Bankr. D.S.D. 1982) (finding that substantive consolidation was warranted because, *inter alia*, "consolidation will most likely lessen administrative expenses and increase the dividend to the unsecured and undersecured creditors").

**WHEREFORE**, Trustee requests that this Court enter an Order: (1) granting this Motion; (2) substantively consolidating the bankruptcy estates of RGS and Alteris; and (3) granting such other relief as the Court deems proper.

//

Dated: February 24, 2021          Respectfully submitted,

**ONSAGER | FLETCHER | JOHNSON LLC**

*s/ Gabrielle G. Palmer*
Joli A. Lofstedt, #21946
Gabrielle G. Palmer, #48948
600 17th Street, Suite 425N
Denver, Colorado 80202
Ph: (720) 457-7064
joli@OFJlaw.com
gpalmer@OFJlaw.com

*Counsel for Jeanne Y. Jagow*
*as Chapter 7 Trustee*